This is the case of Harleysville Insurance Company v. Moore, MOHR Architecture, et al. 1-19-2427. You're in the 1st District Appellate Court in front of the 2nd Division today with myself, Terry Levin, and my colleagues Aurelia Puchinski and Cynthia Cobbs. And what we've been doing, not always faithfully, but what we've been trying to do with this Zoom technology is to give each of you 10-15 minutes uninterrupted, trying to find our mute button here somewhere, and let you make your case and then we'll try to ask you some questions as pertinent. May not be a lot, may be a lot, you never know. So why don't we start with the questions. Thank you. Stuart Brody, Thompson, Brody, Kaplan, on behalf of the appellant and the plaintiff in the underlying litigation, if it may please the court and opposing counsel, thank you for this opportunity to address you. Although the underlying motions, Judge Brennan's order from June 28, 2019, and the briefs on the appeal have a whole host of seen, we are in receipt of the court's letter to restrict and limit our arguments to the economic loss doctrine and the Mormon issue. And so I will get right to the crux of that matter and what I believe may be the issue in that regard for the court. As we know, since 1982, obviously, the those of us in for myself and property damage cases, and throughout a lot of these type of losses that I have experienced over those 30 years in my practice, and even a few appeals previously on this issue, it, the Mormon doctrine and its progeny are obviously very lengthy, and cover a lot of different issues. And we're all very familiar with some of the exceptions, which I know are in the briefs that I don't mention so much. But obviously, there are the exceptions that we all normally see, and at least in these cases, with damage to other property, and the obviously the sudden and dangerous occurrence. And we know that those are normal exceptions. But in this case, I think we have one more pressing issue, which may be something I anticipate is of concern to the court. And so I just want to mention for literally only a minute or two, a few things that I think may get right to the crux of this issue. In the Bramco brief on page nine, and I quote to them, and the end of the case, a plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under the contract. And that is from the Anderson case. And I think in the Anderson case, we see, they specifically talked about the relationship from which the duties arise, and that it would be a result of the failure to properly bargain for the expected results. In the Campbell brief, they again, quote, the economic loss applies even to plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations. And that is the Chicago flood litigation. And I think that that is important. And in that case, they also talk about if it is that rather than a dangerous event. So just to note for a moment, that exception, I personally would see a ceiling falling down on the public in a public place like this, where there could be potentially hundreds of people in a bar, a dangerous event, if that was the potential of harm that it could cause. But one more thing I mentioned in the cases that are cited in even the more architecture brief on page 12, when the property is damaged by disappointed commercial expectations, then the economic loss rule bars, recovery and tort. Again, and then the last case, which I think and I mentioned these only because I think these are the seminal cases, which the defendants rely on is the Sienna case. That court obviously much more recently in 2018, tells us that the doctrine denies the remedy in tort to a parties whose complaint is rooted in disappointed contractual or commercial expectations. So I think one of the things in this case that we've tried to point out that is quite critical is the fact that this is an independent relationship in these contracts, in the negotiations, in the commercial expectations of all of these circumstances was our tenant, was bottleneck, was the person who's entering into the contract, who was negotiating, who had commercial expectations of all of the discussions, negotiations and contract with these defendants. The independent situation is the property owner here. One of the circumstances, which we have seen in other cases is you could have architects, engineers, contractors, where if they don't do the job correctly on a construction and the building collapses, and damages the entire building next door. Well, although we know that's an exception, there are duties that are arising to that property next door outside the contract. So they do exist under some of the exceptions, even under the case law and the Mormon progeny. In this case, one other item really is that if this I know that's another issue there, but it plays into and is tangentially connected to this economics law. It's not true because if they are third party beneficiaries, which obviously I think is truly an obvious in this circumstance, as the property owner, when the tenant improves this, and we've got all the improvements to the property, I don't see how they could not be a third party beneficiary of this contract. But if this court does determine that Navigant is a third party beneficiary, I believe that the economic loss doctrine in this issue of the Mormon doctrine barring the recovery in tort becomes somewhat moot. Because then, as they have mentioned in so many of the cases we've seen, that this court and the Illinois remedy at law, which we have seen in some of the cases has been a concern. And when we take all of the circumstances and facts in this case, that is why the third party beneficiary issue was so important because then it provides us that proper and appropriate remedy at law, which then doesn't exist. And I recognize and acknowledge that some of the case law says that may be tough. Like if don't have that remedy, you know, you're out of luck. But all of the circumstances in this case, I think, cause us grave concern of this independent relationship and the third party beneficiary that are not inseparable to some extent in our view. You're talking about the intended beneficiary, and there's a line of cases on that. What's your response to the Ball Corporation case where they quote the court, an owner will always benefit from work done on his property. So I mean, that would mean that in every single case, they're an intended beneficiary. Yes, but I think the perspective of the court, and I won't really try to assume too much, but I think the court in that case, and in some of the other cases that really talking about the owners who have these contracts and are benefiting from other contracts, they're not so much. I think here where we have a commercial tenant, but I think that that may be true. Like I understand the court's position in that. I just don't think that it's taken out of context, meaning here, even though that may be true, the circumstances here with a commercial tenant and the owner, it does fall into the category of being an intended third party beneficiary. Do you believe that the so-called sudden and calamitous doctrine is applicable here? I do, even though I know the briefs throughout this case and the arguments have talked about the fact that I have a 2008-9 renovation, I have a 2011-12 renovation, and I acknowledge the time frame here. It is not something that I could candidly ignore, that the arguments have been put into the view of, well, this happened over time, and that was it. But here's what starts collapsing, and that's when the investigation shows that we have one or two trusses that are broken, but that causes other trusses to be unsafe, crack, and other ones have to be replaced because now the system is the whole ceiling system, and everything else that's connected with it has to be totally replaced. So to that extent, I do see what I would call a sudden and dangerous occurrence, and that's why I think it can fall into that exception, even under the economic loss doctrine and the Mormon and its progeny here. Okay. The final point I wanted to bring up is it seems to me that you sort of late in the game brought up the possibility of relying on the restatement, the voluntary undertaking. You brought it up in your reply brief. Is that a little bit late? Well, two things I would point out. The court may have taken the position that it was late. However, I think that in the June 28, 2019 order that we are addressing from Judge Brennan, she actually addressed all of these issues. So if this court was going to go back and say, well, it was too late in the trial court because that's something should have been argued or that I could not really address other than to recognize that that was the time frame. However, I think because we are on the appeal from that order and the order from Judge Brennan addressed those issues, again, without dismissing them, they were part of her consideration that I think it then is properly before this court for that analysis. Okay. But in that regard, all those lines of cases, and we've had several in our division, isn't it true that the conduct that you're talking about has to be, the work has to be done for the protection of others? And the case that I think would be applicable would be Scott and Fetzer, the fire alarm system installer, where of course, if you're putting a fire alarm system in, you're doing it specifically to protect for anybody. And again, it goes back to some extent of the point that I already made, but very briefly is that I don't, it's a factual specific analysis, right? It's very fact specific, but in my view, especially having done so many of these property cases, and I've done many collapses and explosion cases throughout my career, I don't see that the integrity of the structure, the ceiling, the trusses, the roof at a commercial building where hundreds and thousands of people are every week, of course, I'm talking pure prior pandemic, but in the normal course of this business, we would have hundreds and thousands of people in this location, the structural integrity of that roof and ceiling to me is no different than a proper safety alarm system. Those are the protections of the public to me that really have no distinction almost. Okay, that's all I have. No questions. Anything? None? None? Okay, let's hear from Mr. Myers. First of all, thank you for arguing on behalf of everybody. Appreciate the good saving of time, I think. Go ahead, proceed. Yes, thank you, your honor. And your honors, may I please the court. I guess to address plaintiff's argument, the Illinois Supreme Court has repeatedly found that the economic loss doctrine bars tort claims seeking recovery solely for economic loss, regardless of the plaintiff's ability to recover in contract. Anderson Electric, of course, parties have said this repeatedly in their briefs, they recognize that the Illinois Supreme Court, as well as the United States Supreme Court, has previously found that the applicability of the economic loss doctrine does not depend on whether the plaintiff can pursue a breach of contract claim. Notably, Mormon itself is a case where the plaintiff could not assert a breach of contract claim, because the Supreme Court found in that case that the one contract claim they could bring and express breach of warranty claim was barred by the statute of limitations. So in that case, where the court established economic loss doctrine, the court did so knowing and in fact, deciding that there was no viable contract claim that applied. And Anderson Electric, the court also noted the US Supreme Court's decision in East River Steamship Corporation, where the United States Supreme Court found in an admiralty proceeding that you could not sue in tort for economic loss, even though that court knew that there was no viable contract claim otherwise. The plaintiff here is arguing that those cases should be distinguished because in those cases, there was some contractual relationship or at least some commercial bargaining that distinguishes those cases. But notably, in cases since Anderson, the Illinois Supreme Court has clarified that the existence of commercial negotiations is not a The most important of these, I think, is the inner Chicago flood litigation lawsuit. In that case, there were multiple plaintiffs who are suing the city of Chicago had no contractual relationship or no commercial dealings whatsoever with the city of Chicago with respect to the construction work that was taking place in the river that caused the floods downtown. The court applied the economic loss doctrine to some of those plaintiffs, not all the plaintiffs, regardless of the fact that there was no commercial dealings between those parties. The Illinois Supreme Court subsequently expanded on this in the city of Chicago versus Beretta lawsuit were explained there. And I think the quote, this is pickables, it says that although the economic loss doctrine is rooted in the theory of freedom of contract, it has grown beyond its original contract based policy justifications of maintaining the fundamental distinction between contract and tort, and protecting the freedom of parties to allocate risk by contract. That's from page 422 of that decision. In that portion of the Beretta decision, the court was was addressing city of Chicago and noting that in that case, the plaintiffs did not have any contractual relations with the defendant, but the court was nevertheless applying the economic loss doctrine to bar those claims. And most recently, in the Siena court condo decision in 2018, the Illinois Supreme Court extend again, expanded on this principle that the economic loss doctrine does not apply. Even, I'm sorry that the economic loss doctrine applies even if the parties don't have a recourse and contract. In that case, the plaintiffs were trying to argue that rather than extending tort to someone, they were trying to extend the implied warranty of habitability to someone with whom they did not have a contract. And the court expanded on the economic loss doctrine and noted that the economic loss doctrine says that tort doesn't allow you to do that. And you also cannot do that through the implied warranty law either. Implied warranty law is a creature of contract. It requires a contractual relationship in the first place. But notably, the court is saying here that there is no exception to the economic loss doctrine for parties who don't otherwise have some contractual remedy. So the Illinois Supreme Court has repeatedly held that the economic loss doctrine applies regardless of whether there's a contractual remedy and regardless of whether the parties that have some kind of contractual dealings. And here, the parties have had contractual dealings. Notably, the plaintiffs has alleged in their complaint that the tenants are owned or at least have membership in their LLCs of individuals who are also members or owners of the named insured, the owner of the property. So we are, the individuals at issue here that are behind the various corporate entities have been involved in these commercial negotiations with various defendants. And I think we can only presume that they structured their contractual relationships in the way they did. Certain parties are named, certain parties are not. And that's by the nature contract law, the court has to assume that the party has drafted that intentionally, which is the issue is getting it to a third party beneficiary law, which could also be addressed in the pleadings below as well. I think just to mention one point that's come up in the argument today, the sudden and dangerous occurrence exception does not apply to mere potential risks. The sudden and dangerous occurrence exception is really designed to recognize that fundamental distinction between tort and contract. I think the way it's best summed is that contract law is dealing with issues of quality. Issues of quality insofar as they're subjective have to be defined in a contract for a court to be able to actually enforce the party's expectations and to craft remedies that are consistent with law and precedent. As opposed to issues of quality, tort law deals with issues of safety. And as a matter of law, we've decided that everybody owes everyone a duty of reasonable care to avoid unreasonable risks to people's safety. However, a cause of action in tort does not accrue based solely on the existence of risk. There has to be a culminating event that results in damages that have been proximately caused by the defendant. The sudden and dangerous occurrence exception is a way of articulating that same point, that the economic loss doctrine would stop to apply at the point where a tort event has occurred, which is not just the existence of duty coupled with a tortious event and damages caused by it. Here, there has been no such tortious event. There may be a risk of such a thing, but that is not a bar to the application of the economic loss doctrine. Indeed, in the Moorman case itself, it dealt with the same issue. There was a crack in the structure of the grain silo that was issued there, and the plaintiff contended that it was a hazard and that that grain silo was at risk of collapsing. But the court applied the economic loss doctrine because the mere potentiality of that occurring did not give rise to a cause of action in tort. The other issue that I would mention is that there is some issue about the voluntary undertaking issue that was raised. It was raised for the first time, I believe, in the reply brief at the appellate level. It was not addressed in the trial court level, although I think it is not applicable for the reasons that I've already discussed, including the fact that there is no tortious event here. And I think that there is a of course, another point is that there has only been three recognized exceptions to the application of the economic loss doctrine, and voluntary taking is not one of those recognized exceptions. Additional issue that's in the brief by the appellees that I wanted to mention is that there would be a basis here for the court to be applying abusive discretion review insofar as the primary argument that the plaintiff has raised on appeal is that the economic loss doctrine should have an exception for parties who do not have commercial dealings. That argument was raised for the first time in a reply brief to a motion to reconsider. And I believe it is Campbell Trust raised in their brief that in the Leciaga decision, for issues that are raised for the first time in motions for reconsideration, the court, the appellate court applies abusive discretion review. And for all the reasons that we've already argued that the novo review would result in a formal of the trial court's decision, certainly abusive discretion review would also affirm the trial court's decision as well. Okay, thank you. I have no questions. I have no questions. Found our mute buttons. Any rebuttal? Just very briefly, two things. First, I wouldn't say so much that the plaintiffs are asking to carve out another exception over and above the three delineated exceptions that we're so familiar with. It's much more of whether there was a misapplication of the law by the lower court, by the trial court, and whether the actual application of the economic loss doctrine does apply here, not to carve out a new exception. It's just that our entire basis we've seen throughout all of the cases, both cited by plaintiffs and defendants, there is a foundational aspect, and that is the failure of these commercial expectations, which we're simply saying, in this case, that could not have existed because of this independent relationship, and that there was no involvement in the contractor negotiation. So it's simply that one of the elements in applying the economic loss doctrine, and in its entire basis and theory, is that we have these failed commercial expectations, and that is throughout all of these cases on both sides. And if that element doesn't exist, that's one of the reasons why this economic loss doctrine would not apply. One of the other things just to mention, although it's outside, I think, the facts and the record in this case when they mentioned the members, there is no evidence that the actual managing member of the landlord who's navigant had any involvement whatsoever in negotiating any of these contracts at all. Whether silent partners have some commonality is of no consequence, because there's no evidence that that managing partner as the landlord had anything to do with the tenants. But if you took the defendant's argument for a moment, it may actually lead the court to think, well, now there's another element, possibly based on their argument, to consider for the third party beneficiary. Because now we see the tenant is there, basically trying to get some involvement or benefit. How do you say they're not a third party beneficiary of the contract? So based on that argument, it might actually even further support the fact that there should be a third party beneficiary contract course of recovery. Okay, we'd like to thank the parties, lawyers for the briefs and the arguments all very professionally done. We'll take the matter under consideration and come back to you within a few weeks, hopefully with an opinion. Thank you very much. We are adjourned.